```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF RHODE ISLAND
_____
                              )
MELISSA M. REYES,             )
        Plaintiff,            )
                              )
    v.                        )
                              )
STANDARD PARKING CORPORATION, )   CA. No. 09-166 S
        Defendant / Third-party )
        Plaintiff,            )
                              )
    v.                        )
                              )
HENRY M. LUKE, CO., INC.,     )
ALLIEDBARTON SECURITIY SERVICES, )
LLC, AND ROUSE PROVIDENCE, LLC, )
        Third-Party Defendants. )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, United States District Judge.

In this matter, Third-party Defendant Rouse Providence, LLC ("Rouse") seeks summary judgment under Fed. R. Civ. P. 56(c) against Third-party Plaintiff Standard Parking Corporation's ("Standard") claims for contribution, common-law indemnity, and breach of contract. For the reasons set forth below, Rouse's motion for summary judgment is GRANTED.

I.  Background

Rouse owns the Providence Place mall, a shopping, dining, and entertainment destination located in Providence, Rhode Island. On January 16, 2006, Rouse executed a contract with Standard (the "Management Agreement") whereby Standard agreed to

manage the mall's parking garage through September 30, 2008. The Management Agreement obligated Rouse, in the event it employed other contractors to perform work in the garage, to use its best efforts to require those contractors to indemnify Standard for all claims arising out of their work. On June 2, 2008, Rouse contracted with Henry Luke, Co., Inc. ("Luke") to perform repairs to the garage (the "Rouse-Luke Contract"); however the contract did not contain the indemnification language required by the Management Agreement.

The Plaintiff in this case, Melissa Reyes ("Reyes"), alleges that while she was driving through the Mall's parking garage on June 10, 2008, a piece of concrete fell from its ceiling and struck and damaged her vehicle, causing her bodily injury. On April 8, 2009, she sued Standard in tort alleging negligence. Standard then filed a third-party complaint for contribution and common law indemnity against Luke on July 31, 2009. Standard has since amended its complaint twice, adding third-party Defendant AlliedBarton Security Services, LLC[1] on April 9, 2010 and Rouse on June 7, 2010. In its second amended complaint, Standard added an additional breach of contract claim against Rouse for failing to require Luke to indemnify Standard as per the Management Agreement.

---

[1] At all relevant times, third-party Defendant AlliedBarton was under contract with Rouse to perform security-related services in the garage.

On April 16, 2009, about a week after Reyes served Standard with her negligence suit, Rouse's parent company, General Growth Properties ("GGP"), petitioned for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). See In re Gen. Growth Props., Inc., No. 09-11977-alg (Bankr. S.D.N.Y.). On September 25, 2009, the Bankruptcy Court issued an order establishing November 12, 2009 as the bar date for Rouse's creditors to file a proof of claim against GGP/Rouse for any claims arising prior to its April 16, 2009 bankruptcy petition date (i.e., prepetition). (See Rouse's Mot. for Summ. J. Ex. 2, ECF No. 62.) Neither Standard nor Reyes filed a proof of claim by the bar date. The Bankruptcy Court subsequently issued an order and notice confirming Rouse's bankruptcy plan (the "Confirmation Order"). The Confirmation Order discharged all claims against Rouse arising prior to March 8, 2010 and enjoined creditors from taking any action related to such claims, including filing a lawsuit. (See Rouse's Mot. for Summ. J. Ex. 3, ECF Nos. 63, 64.)

On February 2, 2011, Rouse filed the present motion seeking summary judgment against Standard's claims. Rouse asserts that Standard is enjoined from pursuing these claims because they were permanently discharged pursuant to the Bankruptcy Court's order confirming Rouse's chapter 11 reorganization. Standard

3

counters that its claims were not subject to the bar date or the Confirmation Order because they had not arisen as of Rouse's bankruptcy petition date, but even if they had, they remain valid because it did not receive adequate notice of the bar date.

II. Legal Standard

Summary judgment may be granted only where there are no genuine issues of material fact. Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 12 (1st Cir. 2007). There is a genuine issue of material fact where "a reasonable jury could resolve the point in favor of the nonmoving party" in a way that would be outcome determinative. Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 150 (1st Cir. 2006) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)).

III. Standard's compliance with the Bankruptcy Court's orders

The Bankruptcy Court's bar date order established November 12, 2009 "as the last date and time" for Rouse's creditors "to file a proof of claim [] based on prepetition claims against [Rouse]." (Rouse's Mot. for Summ. J. Ex. 2, at 1, ECF No. 62.). "Under the Bankruptcy Code proof of claims must be presented to the Bankruptcy Court for administration, or be lost when a plan of reorganization is confirmed." NLRB v. Bildisco and Bildisco,

465 U.S. 513, 529, (1984) (addressing a Chapter 11 reorganization) (citing 11 U.S.C. §§ 501, 502 and 1141).

With limited exceptions, confirmation of a chapter 11 bankruptcy plan "discharges the debtor from any debt that arose before the date of such confirmation." See 11 U.S.C. § 1141(d)(1)(A). Under the Bankruptcy Code, the term "debt" includes "liability on a claim," 11 U.S.C. § 101(12), and a "claim" is defined as:

- (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

- (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(5). In enacting this provision, "Congress gave the term 'claim' the 'broadest available definition.'" Rederford v. US Airways, Inc., 589 F.3d 30, 35-36 (1st Cir. 2009) (quoting F.C.C. v. NextWave Pers. Commc'ns, 537 U.S. 293, 302, (2003)).

The Court turns first to Standard's contribution and common-law indemnity claims. Standard asserts that its contribution claim did not exist prepetition because, as required under Rhode Island law, it had (and has) not been

5

adjudged a joint tortfeasor with Rouse nor discharged any shared liability to Reyes. (See Rouse's Mem. in Supp. of Mot. for Partial Summ. J. 7, ECF No. 73 (citing R.I. Gen. Laws § 10-6-4).) Standard also asserts that its Rhode Island common-law indemnification claim did not exist prepetition because "[a]t the time of Rouse's bankruptcy filing, there was no allegation that the prospective indemnitor, Rouse, was liable to the prospective indemnitee, Standard." (Id. at 7-8 (citing Wilson v. Krasnoff, 560 A.2d 335, 341 (R.I. 1989); Hawkins v. Gadoury, 713 A.2d 799, 803 (R.I. 1998)).)

However, Standard's arguments seem to conflate having a valid cause of action under Rhode Island law with the existence of a "claim" under federal bankruptcy law. It is well established that "[t]he accrual of a cause of action under state law does not determine when a claim arises under the Bankruptcy Code . . . because the Code defines 'claim' to include contingent and unmatured claims, which may not yet constitute a cause of action under state law." In re Designer Doors, Inc., 389 B.R. 832, 837-38 (Bankr. D. Ariz. 2008); see also Woburn Assocs. v. Kahn (In re Hemingway Transport, Inc.), 954 F.2d 1, 9 n.9 (1st Cir. 1992) (collecting cases holding that Congress did not intend Bankruptcy Code "claim criteria to turn on the peculiarities of state law, the timing of a lawsuit, or the claimant's failure to anticipate specific future

6

contingencies"); In re M.A.S. Realty Corp., 318 B.R. 234, 237 (Bankr. D. Mass. 2004) ("Section 101(5) expressly included within the purview of claim a cause of action or right to payment that has not yet accrued or become cognizable." (citing Cool Fuel, Inc. v. Bd. of Equalization of Calif. (In re Cool Fuel, Inc.), 210 F.3d 999, 1006 (9th Cir. 2000) ("It is well-established that a claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued."))); In re R.H. Macy & Co., 283 B.R. 140, 146 (S.D.N.Y. 2002) ("[A] creditor need not have a cause of action that is ripe for suit outside of bankruptcy in order for it to have a prepetition claim for purposes of the Bankruptcy Code.") (internal citation omitted).

Because Rouse owned the garage when Reyes' was injured, Standard, as manager of the garage, received a "contingent" right to payment for contribution and common-law indemnification the moment Reyes served Standard with her negligence suit on April 9, 2009. 11 U.S.C. § 101(5)(A); see also Rederford, 589 F.3d at 36 ("[T]he inclusion of contingent claims in § 101(5)(A), ensures that even the most uncertain and difficult to estimate claims can be adjudicated in the bankruptcy proceedings.") (quotation and citation omitted). Standard was served approximately one week before Rouse petitioned for bankruptcy. Thus, Standard's contribution and common-law

indemnification claims arose prepetition, albeit contingently, within the meaning of 11 U.S.C. § 101(5).

Standard's breach of contract claim is a bit stickier because it presents a twist on the typical contractual indemnification claim in the bankruptcy context, where a debtor/indemnitor's liability arises out of its refusal to pay an indemnitee. For instance, if the Management Agreement had obligated Rouse to indemnify Standard directly, then Standard's breach of contract claim undoubtedly would be considered prepetition. In re Hemingway, 954 F.2d at 9 n.9 ("When parties agree in advance that one party will indemnify the other party in the event of a certain occurrence," a contingent right to payment exists "upon the signing of the agreement.") (quotation and citation omitted). Here, however, the liability of the debtor (Rouse) arises from the breach of its contractual obligation to require a third-party (Luke) to indemnify the indemnitee (Standard). The relevant question then is: at what point in these circumstances, if at all, did Standard have a contingent breach of contract claim against Rouse within the meaning of the Bankruptcy Code?

As the First Circuit has not addressed this situation head-on, this Court finds it useful to rely on the frequently invoked analytical framework set forth in In re All Media Props., Inc.,

8

to assess when a contingent claim for breach of contract arises under 11 U.S.C. § 101(5):

> [contract] claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.

5 B.R. 126, 133 (Bankr. S.D. Tex. 1980), aff'd mem., 646 F.2d 193 (5th Cir. Unit A May 1981), overruled in part on other grounds by In re Trusted Net Media Holdings, LLC, 550 F.3d 1035 (11th Cir. 2008); accord First City Beaumont v. Durkay (In re Ford), 967 F.2d 1047, 1051 (5th Cir. 1992) (quoting same); Semel v. Dill (In re Dill), 731 F.2d 629, 631 (9th Cir. 1984) (quoting same); B.D. Int'l Discount Corp. v. Chase Manhattan Bank, N.A. (In re B.D. Int'l Discount Corp.), 701 F.2d 1071, 1073 n.2 (2nd Cir. 1983) (quoting same). The test essentially involves two prongs: "the Court must determine first what event or series of events 'triggers' this liability and then whether the occurrence of that event either was or could fairly have been contemplated by the parties before confirmation of the plan." In re CD Realty Partners, 205 B.R. 651, 657 (Bankr. D. Mass. 1997).[2]

---

[2] In an apparent reference to this test, Standard asserts that its claim was "trigger[ed]" by its "discovery that Rouse breached the Management Agreement" and implies that this discovery occurred after the bar date. Standard's Mem. in Opp. to Mot. for Summ. J. 8, ECF No. 73). Standard's discovery of

9

As to what triggered liability for Standard's breach of contract claim, the following events are relevant: (1) the execution of the Management Agreement in January 16, 2006; (2) Rouse's failure to require Luke to indemnify Standard upon the execution of the June 8, 2008 Rouse-Luke Agreement; and (3) the service of Reyes' negligence suit upon Standard on April 9, 2008. Each of these events occurred prepetition, or prior to GGP/Rouse's April 16, 2009 chapter 11 petition. As to whether these events "could fairly have been contemplated by the parties before confirmation of the plan," In re CD Realty Partners, 205 B.R. at 657, the Court concludes so. On its face, the Management Agreement obligating Rouse to require third-party

---

the breach is irrelevant to the issue of when a claim arises under the Bankruptcy Code. The In re All Media Props., Inc. test makes clear that the events triggering liability must be only "reasonably contemplated" by the parties in order to constitute a contingent breach of contract claim under the Bankruptcy Code. 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980), aff'd mem., 646 F.2d 193 (5th Cir. Unit A May 1981), overruled in part on other grounds by In re Trusted Net Media Holdings, LLC, 550 F.3d 1035 (11th Cir. 2008); see also Boston & Maine Corp. v. Mass. Bay Transp. Auth., 587 F.3d 89, 100 (1st Cir. 2009) (holding in a bankruptcy case that "actual knowledge by the creditor of the claim is not necessary" for "a contingent claim to exist").

Moreover, as Standard filed its third-party complaint against Luke approximately six months before the bar date, it had ample opportunity to discover the existence of the Rouse-Luke contract before the bar date. See Boston & Maine, 587 F.3d at 101. ("A contingent claim . . . exists if sufficient information was available to the prospective claimants that, if sought out, would give the plaintiff constructive knowledge of the claim . . . [the Bankruptcy Code] does not allow plaintiffs to put on blinders or attempt an 'ostrich defense.'" (citation omitted)).

contractors to indemnify Standard contemplates liability arising from the work of such third-party contractors. Moreover, that Rouse might breach the Management Agreement always remained a possibility. Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp., 266 B.R. 575, 580 (S.D.N.Y. 2001) ("Certainly the possibility of a future breach is within the presumed contemplation of the contracting parties." (citing In re Russell, 193 B.R. 568, 571 (Bankr. S.D. Cal. 1996) ("It is within the fair contemplation of the parties entering into a contract that the other party may breach it, or [has] made representations to induce the making of the contract. Thus, a contingent claim arises at that point in time, although it may never mature."))).

Because the events triggering Standard's breach of contract claim against Rouse all arose prepetition and were well within the fair contemplation of both parties, Standard had a prepetition contingent breach of contract "claim" against Rouse, within the meaning of 11 U.S.C. § 101(5).

In finding that Standard's contribution, common-law indemnity and breach of contract claims arose prepetition, the Court concludes that Standard was required to file proof of these claims with the Bankruptcy Court by the bar date. Since it did not, and because its alternative notice argument fails, see infra, Standard is permanently enjoined from pursuing these pursuant to the Bankruptcy Court's Confirmation Order. See

11

Factors Funding, Inc. v. Fili (In re Fili), 257 B.R. 370, 373 (B.A.P. 1st Cir. 2001) (confirmation of a bankruptcy plan is a "final order, with res judicata effect.")

IV. Notice

A claimant's prepetition claim against a chapter 11 debtor can survive the bankruptcy plan's confirmation if the claimant received constitutionally inadequate notice of the bar date. See generally Arch Wireless, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.), 534 F.3d 76, 82-87 (1st Cir. 2008). As such, Standard argues that even if its claims arose prepetition, they were not discharged by the Confirmation Order because notice of the bar date was inadvertently sent to One Providence Place instead of its correct address at Eleven Providence Place, in Providence, Rhode Island. In response, Rouse highlights the undisputed facts that (1) Standard received notice at eight other offices around the country, including its corporate headquarters, and (2) Standard implicitly acknowledged receipt of notice when it filed a timely proof of claim against GGP for an unrelated matter in the same bankruptcy proceedings. (See Rouse's Statement of Undisputed Facts ¶¶ 17, 18, ECF No. 60.)[3]

---

[3] Of course, a threshold matter in the bankruptcy notice analysis is whether Standard was a known or unknown creditor. However, the parties do not seem to dispute that Standard was a known creditor (Standard's Mem. in Opp. to Mot. for Summ. J. 10; Rouse's Reply 3, ECF 78), and the Court has no reason to believe

12

In the bankruptcy context, notice to a company's branch or division generally satisfies the due process requirements of notice for the entire company. See, e.g., In re Frontzak, No. 08 B 8580, 2009 WL 4576040, at *3 (Bankr. N.D. Ill. Dec. 2, 2009) (finding notice properly served despite its receipt by the wrong division of Wells Fargo bank, and stating "[f]or purposes of due process, moreover, notice to one arm or division of a business entity has frequently been held adequate notice to another arm or division of the same entity"); In re Petroleum Prod. Mgmt., Inc., 240 B.R. 407, 415 (Bankr. D. Kan. 1999) ("A creditor who chooses to operate its business by dividing its activities into various departments cannot shield itself against notice properly sent to the creditor in its name and at its place of business."); Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Broadhead, 155 B.R. 856, 858–59 (S.D.N.Y. 1993) ("There is no statutory requirement, however, that one identify the specific division of a company on a bankruptcy notice. Nor is it required by due process. Once delivered, it is the responsibility of the creditor to distribute the notice to the appropriate party within its organization."); In re Drexel Burnham Lambert Group, Inc., 129 B.R. 22, 24 (Bankr. S.D.N.Y. 1991) (finding notice properly served on branch offices of a

---

otherwise as Rouse listed Standard in the schedule of creditors it presented the Bankruptcy Court.

13

bank because the bank "bears responsibility for having adequate systems in place to ensure that legal notices and other communications reach the appropriate parts of its business empire"). Under the weight of this authority, due process was satisfied upon Standard's receipt of notice of the bar date at eight of its branch offices, including its corporate headquarters.

V. Conclusion

For these reasons, the Court holds that Standard's contribution, common-law indemnity, and breach of contract claims against Rouse were prepetition claims within the meaning of 11 U.S.C. § 101(5) of the Bankruptcy Code. Accordingly, the claims have been discharged pursuant to the Bankruptcy Court's Confirmation Order. Rouse's motion for summary judgment is therefore GRANTED.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: June 14, 2011